**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BERKLEY NETWORKS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-5145-WHP (KNF) |
| | ) | |
| INMARKET MEDIA, LLC, | ) | **DEFENDANTS' ANSWER,** |
| MARK DIPAOLA, and TODD DIPAOLA, | ) | **AFFIRMATIVE DEFENSES, AND** |
| | ) | **COUNTERCLAIM** |
| Defendants. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |

Defendants inMarket Media, LLC ("inMarket Media"); Mark Dipaola; and Todd Dipaola

(collectively, "Defendants") hereby respond to Plaintiff Berkley Networks Corporation's

Complaint as follows:

## NATURE OF ACTION

1.    Plaintiff seeks injunctive relief and damages for infringement of a registered
      trademark in violation of Section 32(1) of the Lanham Act 15 U.S.C. § 1114;
      false designation of origin in violation of Section 43(a) of the Lanham Act,
      15 U.S.C. § 1125(a); trademark infringement in violation of the common law of
      the State of New York; and unfair competition in violation of the common law of
      the State of New York.

**Answer:**    Defendants admit that Plaintiff seeks injunctive relief and damages for the causes

of action listed in paragraph 1 but deny that those claims have merit, deny that Plaintiff is

entitled to the requested relief, and deny each and every remaining allegation in paragraph 1.

2.      In particular, this case concerns Defendants' adoption of a trade name and service mark - "inMarket" - that is confusingly similar to Plaintiff's federally-registered INMARKIT service mark. Since at least as early as November 1, 2008, Plaintiff has prominently used its INMARKIT mark in connection with the marketing and sale of a mobile and online shopping platform that includes, among other things, a digital bookmarking technology that may be used by manufacturers and retailers of consumer products to enable consumers to save and instantly share items while browsing or shopping on a manufacturer's or retailer's website or mobile application. Plaintiff's INMARKIT technology also provides consumers with mobile notifications that alert them when a retailer's nearby brick and mortar stores carry those items or when a manufacturer or retailer is offering discounts or other promotional incentives relating to those items.

**Answer:**      Defendants admit that this case concerns, among other issues, inMarket Media's adoption of the trade name and service mark "inMarket" but deny that the "inMarket" name and mark, as used by inMarket Media, is confusingly similar to Plaintiff's federally registered INMARKIT service mark and deny that Plaintiff's federal registration for INMARKIT is valid. Defendants deny that Messrs. Todd and Mark Dipaola are individually using the "inMarket" name and mark other than as agents of inMarket Media. Defendants deny that Plaintiff has prominently used its INMARKIT mark since at least as early as November 1, 2008, in connection with the goods and/or services listed in paragraph 2 or with any other goods or services. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence of paragraph 2 and therefore deny each and every allegation in such instance.

3.      Long after Plaintiff introduced its INMARKIT service mark, Defendants began to operate a competing business engaged in the marketing and sale of mobile and online shopping tools, including a nearly identical digital bookmarking technology, which also enables consumers to save items and provides alerts to consumers regarding the location of goods or promotions in nearby retail establishments, under the nearly identical mark "inMarket." This conduct was not only engaged in without Plaintiff's consent, but in willful disregard of Plaintiff's rights in the INMARKIT service mark, of which Defendants were well aware.

**Answer:**       Defendants admit that they did not obtain Plaintiff's consent in relation to any business Defendants have conducted in connection with inMarket Media's "inMarket" mark but deny that any such consent was necessary.   Defendants deny all remaining allegations in paragraph 3.

4.      The foregoing conduct has caused and is likely to continue to cause confusion, mistake, and deception among the general consuming public and the trade as to an affiliation, connection, or association between the products and services offered under the marks "inMarkit" and "inMarket," all to the irreparable harm of Plaintiff.

**Answer:**       Defendants deny all allegations in paragraph 4.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiff's claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. § 101 [*sic*] *et seq.*, and substantial and related claims under the common law of the State of New York.

**Answer:**       Defendants admit the allegations in paragraph 5.

6.      Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b), because Defendants are either subject to personal jurisdiction within this judicial district and/or because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district.

**Answer:**       Defendants deny the allegations in paragraph 6.

## THE PARTIES

7.      Plaintiff inMarkit is a corporation duly organized and existing under the laws of the State of New York, and maintains its principal place of business at 175 Varick Street, New York, NY 10014.

**Answer:**       Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7 and therefore deny each and every allegation in paragraph 7.

8.      Upon information and belief, Defendant inMarket is a limited liability company organized and existing under the laws of the State of California, having its principal place of business at 1350 Abbot Kinney Boulevard #203, Venice, California, 90291.

**<u>Answer:</u>**      Defendants deny that inMarket Media is organized under the laws of the State of California.  Defendants admit that inMarket Media is a limited liability company having its principal place of business at 1350 Abbot Kinney Boulevard #203, Venice, California 90291.

9.      Upon information and belief Defendant Mark DiPaola is an individual resident of California. Upon further information and belief, Mark DiPaola is the Chairman and Co-Founder of Defendant inMarket, and is a moving, active, conscious force directing Defendant inMarket's wrongful actions described herein. Accordingly, Mark DiPaola is personally responsible and liable for the wrongful actions of Defendant inMarket as described herein.

**<u>Answer:</u>**      Defendants admit that Mark Dipaola is an individual resident of California, that he is a co-founder of inMarket Media, and that he currently serves as inMarket Media's chairman.  Defendants deny all remaining allegations in paragraph 9.

10.      Upon information and belief Defendant Todd DiPaola is an individual resident of California. Upon further information and belief Todd DiPaola is the Chief Executive Officer and Co-Founder of Defendant inMarket, and is a moving, active, conscious force directing Defendant inMarket's wrongful actions described herein. Accordingly, Todd DiPaola is personally responsible and liable for the wrongful actions of Defendant inMarket as described herein.

**<u>Answer:</u>**      Defendants admit that Todd Dipaola is an individual resident of California, that he is a co-founder of inMarket Media, and that he is the current CEO of inMarket Media. Defendants deny all remaining allegations in paragraph 10.

**INMARKIT'S BUSINESS**

11.  Since 2008, Plaintiff inMarkit has been marketing, promoting, selling, and distributing under the INMARKIT service mark, a digital technology to manufacturers and retailers of consumer products that allows consumers browsing or shopping on a manufacturer's or retailer's website to create a "digital bookmark" of items they wish to save, and items they wish to share instantly with their friends and family. Since at least February 2012, this technology also has allowed consumers to elect to receive electronic notifications on their mobile devices that alert them when items on their digital wish list are located in a retailer's brick and mortar establishments that are nearby the consumer's then-current location, or when a manufacturer or retailer is offering a promotion relating to an item on their wish lists. Plaintiff's inMarkit products and services benefit manufacturers and retailers by allowing consumers to centralize information they receive from loyalty programs, and by focusing the dissemination of the manufacturers' and retailers' advertisements, promotions, discount programs, and loyalty programs.

**Answer:**    Defendants deny the allegations in the first sentence of paragraph 11. Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in paragraph 11 and therefore deny them.

12.  The INMARKIT service mark is the subject of U.S. Trademark Registration No. 3,565,942, registered on the Principal Register on January 20, 2009, for, *inter alia*, advertising and providing electronic commerce services, specifically the "dissemination of advertising, discount programs, customer loyalty programs and customer awards programs" through transmission of text, data, audio, video, and sound; and for providing online, non-downloadable software that enables the interactive exchange of information. inMarkit's trademark registration for its INMARKIT service mark is in full force and effect. A copy of the registration certificate for the INMARKIT service mark is attached hereto as Exhibit A.

**Answer:**    Defendants admit the alleged INMARKIT service mark is the subject of U.S. Trademark Registration No. 3,565,942, which was registered on the Principal Register on January 20, 2009, and that Exhibit A to the Complaint appears to be a copy of the registration certificate. Defendants admit that the registration is "in full force and effect" but only to the extent that means the registration is recorded "live" in the USPTO database. To the extent "in full force and effect" could be construed to mean "valid," Defendants deny this allegation.

Defendants deny that the list of services identified in paragraph 12 is an accurate representation of the services recited in Reg. No. 3,565,942 and deny each and every remaining allegation in paragraph 12.

13.     InMarkit has also applied to register the INMARKIT trademark for, *inter alia*, "downloadable software in the nature of an application enabling a user to locate businesses or places in proximity to the user in the field of consumer products and services," U.S. Ser. No. 85/691,622.  The USPTO issued a Notice of Allowance on April 8, 2014.

**Answer:**     Defendants deny that an entity named "InMarkit" has applied to register any trademarks or service marks.  Defendants admit that Plaintiff (Berkley Networks Corp.) applied to register the INMARKIT trademark based on an intent to use that mark in the future on, *inter alia*, "downloadable software in the nature of an application enabling a user to locate businesses or places in proximity to the user in the field of consumer products and services," which application was assigned U.S. Serial No. 85/691,622.  Defendants admit that the USPTO issued a notice of allowance on April 8, 2014.

14.     InMarkit maintains a company website, www.inmarkit.com, for use by its customers and prospective customers. As depicted below, a black banner that appears on each page of the website features Plaintiff's "inMarkit" logo, which is comprised of its name with a lower case "i" in a white, sans-serif font, as well as different tabs in a similar white, sans-serif font, representing different aspects of inMarkit's business. The website also contains textual material promoting inMarkit's business success, as follows:



**Answer:**     Defendants admit that the image below paragraph 14 in the Complaint appears to be a screenshot from the top of the home page at www.inmarkit.com as it appeared on August 27, 2014.  Defendants admit that the domain name inmarkit.com is registered to Berkley Bowen, whom Defendants understand to be Plaintiff's president.  Defendants lack knowledge or information sufficient to form a belief about the truth of whether Plaintiff maintains the website at inmarkit.com for use by its customers and prospective customers.  Defendants admit that a black banner featuring an "inMarkit" logo, comprised of the word inMarkit with a lower case "i" in a white, sans-serif font, and different links in a similar white, sans-serif font appear on the home page of www.inmarkit.com.  Defendants deny that the banner, logo, and links appear on each page of the www.inmarkit.com website.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that the links (referred to as "tabs" in paragraph 14) in the banner at www.inmarkit.com "represent different aspects of inMarkit's

business."  Defendants deny that the website at www.inmarkit.com "contains textual material promoting inMarkit's business success."

## DEFENDANTS' ALLEGED CONDUCT

15.     Defendants are currently, and at all times relevant hereto have been engaged in the business of promoting a mobile shopping application. Defendants produce and promote their services to customers throughout the United States, including customers and prospective customers in this judicial district.

**Answer:**        Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 15 because those allegations do not define the period of time

that constitutes "all times relevant hereto."  Defendants admit that inMarket Media is currently

engaged in the business of promoting a mobile shopping application and that inMarket Media

promotes its services to customers throughout the United States, including customers and

prospective customers in the Southern District of New York.

16.     Upon information and belief, Defendants originally operated a company called Checkpoints LLC. Upon further information and belief, since as early as 2011, Checkpoints engaged in the marketing and sale of a shopping rewards mobile application that provided consumers with discounts and products if they scanned products that they purchased.

**Answer:**        Defendants admit that Mark and Todd Dipaola operated a company called

CheckPoints LLC, which, at least as early as 2011, engaged in the marketing and sale of a

shopping rewards mobile application that provided consumers with discounts and products if

they scanned products that they purchased.  Defendants deny that CheckPoints LLC was Mark

and Todd Dipaola's "original[]" company and deny that inMarket Media operated CheckPoints

LLC.

17.     Upon information and belief, Defendants applied to register the mark "inMarket" on November 29, 2011, U.S. Serial No. 85/483,063. This application was signed by Defendant Todd DiPaola. Upon information and belief, the United States Patent and Trademark Office ("USPTO") rejected Defendants' application based on the fact that "inMarket" was confusingly similar to Plaintiff's validly registered INMARKIT mark. In its rejection, the USPTO stated that the marks had a "similar sound and commercial impression," that the "services are virtually identical," that inMarket and inMarkit were "essentially offering online advertising services for others," and that both were "utilizing award and reward programs." On October 10, 2012, U.S. Serial No. 85/483,063 was abandoned, for failure of inMarket to respond to the USPTO's Office Action.

**Answer:**     Defendants deny that Plaintiff's INMARKIT mark is validly registered, denies that "inMarket" was confusingly similar to Plaintiff's INMARKIT mark, and denies that the USPTO stated that the application to register "inMarket" was rejected because "inMarket" was confusingly similar to Plaintiff's INMARKIT mark.  Defendants admit the remaining allegations in paragraph 17.

18.     Upon information and belief, since at least as early as December 2011, Defendants have known that inMarkit actively promotes and distributes its digital bookmark technology to manufacturers and retailers. It was at that time that Defendant Mark DiPaola approached inMarkit and sought to license or acquire the INMARKIT service mark. Plaintiff, however, refused to license or assign its INMARKIT mark to Defendants.

**Answer:**     Defendants deny ever having knowledge that inMarkit (which Defendants understand to refer to Berkley Networks Corp.) ever actively promoted and distributed a "digital bookmark technology" to manufacturers and retailers, deny that Mark Dipaola "approached inMarkit and sought to license or acquire the INMARKIT service mark" and deny all remaining allegations in paragraph 18.

19.   Upon information and belief, after Plaintiff refused to license or assign its INMARKIT mark to Defendants, Defendants announced that they were changing their corporate name from Checkpoints LLC to inMarket. Thereafter, on February 2, 2012, Plaintiff notified Defendants, that Defendants were infringing Plaintiff's intellectual property rights. When so notified, Defendants informed inMarkit that they had no plans to rebrand their mobile application and rewards program under the name inMarket, or to otherwise offer a competing service under that mark.

**Answer:**      Defendants deny that Plaintiff ever "refused to license or assign its INMARKIT mark to Defendants."  Defendants admit that, at some point before February 2, 2012, they announced that they were changing their corporate name from CheckPoints LLC to inMarket Media LLC.  Defendants admit that sometime on or after February 2, 2012, Mark Dipaola received a letter from Plaintiff's counsel addressed to CheckPoints LLC.  Defendants admit that the letter, which is dated February 1, 2012, stated Plaintiff's apparent view that inMarket Media (then known as CheckPoints LLC) was infringing Plaintiff's alleged rights in the INMARKIT mark.  Defendants admit that it responded to Plaintiff and stated that CheckPoints LLC had no current plans to rebrand its CHECKPOINTS mobile application and rewards program under the mark INMARKET.  (The application and reward program is still branded as CHECKPOINTS today.)  Defendants deny the remaining allegations in paragraph 19.

20.   Upon information and belief despite these assurances, and with full knowledge of the types of products and services Plaintiff offers for sale and sells under the INMARKIT service mark, Defendants have not only continued to use the infringing "inMarket" mark, but have also recently expanded their offerings under the "inMarket" mark to include a shopping application with a "Mobile to Mortar" software platform, which alerts consumers to the presence of products located in nearby retail establishments. This product competes directly with various products and services that, as Defendants well know, Plaintiff has been offering for sale and selling for years under its INMARKIT mark.

**Answer:**      Defendants deny currently or ever having "full knowledge or the types of products and services Plaintiff offers for sale and sells under the INMARKIT service mark" and deny that any use of the INMARKET mark by Defendants is infringing.  Defendants admit that

inMarket Media has continued to operate under its inMarket mark and that it has expanded its offerings under the inMarket mark to include a technology called "Mobile to Mortar," but deny that its Mobile to Mortar technology is a "shopping application" and deny that it "alerts consumers to the presence of products located in retail establishments."  Defendants deny that inMarket Media's Mobile to Mortar technology competes directly with any products and services that Plaintiff "has been offering for sale and selling for years under its INMARKIT mark" and denies having any knowledge of any such products and services Plaintiff has been offering and selling.

21.     Upon information and belief, Defendants promote these infringing products and services on their company website, located at www.inmarket.com. As depicted below, that website contains a black banner that appears on every page of the site, which features the "inMarket" name in a predominantly white, sans-serif font, along with tabs for different information about inMarket, which also appear in a white, sans-serif font, mimicking the presentation on Plaintiff's website.

Plaintiff's www.inMarkit.com website:

Defendants' www.inMarket.com website:

 

**Answer:**      Defendants admit that inMarket Media promotes its Mobile to Mortar product on its website at www.inmarket.com but denies that any products or services promoted on that website are infringing.  Defendants admit that the right-hand image below paragraph 21 is a screenshot of the website at www.inmarket.com.   Defendants admit that the website at www.inmarket.com contains a black banner on every page of the site, which features the

"inMarket" name, displayed in green and white in a sans-serif font, but deny that the "inMarket" logo is "predominantly white."  Defendants admit that the black banner at the top of the website at www.inmarket.com contains "tabs" or links but deny that the website at www.inmarket.com mimics the presentation on Plaintiff's website.  Defendants deny each and every remaining allegation in paragraph 21

22.     Defendants' use of the service mark "inMarket" has caused, and, upon information and belief, will continue to cause confusion among Plaintiff's customers and members of the retail trade. Among other things, prospective customers visiting Defendants' website, or otherwise encountering Defendants' "inMarket" products or services, are likely be confused as to whether inMarkit has sponsored or approved inMarket's use of the virtually identical mark.

**Answer:**     Defendants deny all allegations in paragraph 22.

23.     Upon information and belief, Defendants intend to continue to market, promote, distribute, sell and/or offer to sell their services under the "inMarket" trade name and service mark, and encroach even further on Plaintiff's business model and technology.

**Answer:**     Defendants admit that they intend to continue to market, promote, distribute, sell and/or offer to sell inMarket Media's services under the "inMarket" trade name and service mark.  Defendants deny that inMarket Media's use of the inMarket trade name and service mark encroaches on Plaintiff's "business model and technology" and deny any intent to encroach on Plaintiff's "business model and technology."   Defendants deny each and every remaining allegation in paragraph 23.

24.     Upon information and belief, Defendants' use of the "inMarket" service mark, and the manner in which they promote their business and present themselves to customers and prospective customers, is and has been part of a deliberate effort to present themselves as if they were Plaintiff, or somehow affiliated with Plaintiff.

**Answer:**     Defendants deny all allegations in paragraph 24.

25.     Unless Defendants' conduct is enjoined, such conduct will severely inhibit and/or destroy Plaintiff's ability to identify its services under its federally-registered INMARKIT service mark, and to cause Plaintiff irreparable harm.

**Answer:**        Defendants deny all allegations in paragraph 25.

## FIRST CLAIM FOR RELIEF
## SERVICE MARK COUNTERFEITING AND INFRINGEMENT (15 U.S.C. § 1114)

26.     The allegations set forth in paragraphs 1 through 25 hereof are adopted and incorporated by reference as if fully set forth herein.

**Answer:**        Defendants incorporate their responses to paragraphs 1 through 25 by reference as

if fully set forth herein.

27.     By the acts alleged herein, Defendants are using a mark that is substantially indistinguishable from, and/or confusingly similar to, Plaintiffs INMARKIT service mark, and have counterfeited and/or infringed, and continue to counterfeit and/or infringe, Plaintiff's service mark, in violation of l5 U.S.C. § 1114.

**Answer:**        Defendants deny all allegations in paragraph 27.

28.     Upon information and belief, Defendants' use of the "inMarket" service mark that is substantially indistinguishable from, and/or confusingly similar to, the INMARKIT service mark, has caused, and is likely to continue to cause confusion, mistake, and deception among retail customers and other members of the trade and general public as to the source of Defendants' services being offered under such counterfeiting and/or infringing marks, or as to a possible affiliation, connection or association between inMarkit and inMarket.

**Answer:**        Defendants deny that the "inMarket" service mark is substantially

indistinguishable from, and/or confusingly similar to, the INMARKIT service mark and deny all

remaining allegations in paragraph 28.

29.     Upon information and belief Defendants have acted with knowledge of Plaintiff's ownership of the INMARKIT service mark, and with the deliberate intention to unfairly benefit from the goodwill symbolized thereby.

**Answer:**        Defendants deny all allegations in paragraph 29.

30.     Defendants' acts constitute willful trademark counterfeiting and/or infringement in violation of 15 U.S.C. § 1114.

**Answer:**        Defendants deny all allegations in paragraph 30.

31.     Upon information and belief, by its actions, Defendants intend to continue their unlawful conduct, and to willfully counterfeit and/or infringe Plaintiff's INMARKIT service mark, unless restrained by this Court.

**Answer:**        Defendants deny engaging in any unlawful conduct and deny all remaining

allegations in paragraph 31.

32.     Upon information and belief, by their willful acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

**Answer:**        Defendants deny all allegations in paragraph 32.

33.     Defendants' acts have irreparably harmed and, unless enjoined, will continue to irreparably harm Plaintiff.  Plaintiff has no adequate remedy at law.

**Answer:**        Defendants deny all allegations in paragraph 33.

## SECOND CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34.     The allegations set forth in paragraphs 1 through 33 here of are adopted and incorporated by reference as if fully set forth herein.

**Answer:**        Defendants incorporate their responses to paragraphs 1 through 33 by reference as

if fully set forth herein.

35.     Upon information and belief, Defendants' use of the "inMarket" trade name and other indicia associated with Plaintiff, has caused and is likely to continue to cause confusion, mistake and deception among the trade as to the source of Defendant's services offered under such mark, or as to a possible affiliation, connection or association between inMarkit and inMarket.

**Answer:**      Defendants deny that the "inMarket" trade name is associated with Plaintiff, deny using any "other indicia" associated with Plaintiff, and deny all remaining allegations in paragraph 35.

36.      Defendants' conduct as aforementioned constitutes a false designation of origin of the services provided under the infringing mark, and/or false and misleading descriptions and representations of fact, in violation of 15 U.S.C. § 1125(a).

**Answer:**      Defendants deny all allegations in paragraph 36.

37.      Upon information and belief, by its actions, Defendants intend to continue to falsely designate the origin of its services and related products as aforesaid, unless restrained by this Court.

**Answer:**      Defendants deny ever falsely designating the origin of its services and related products and deny all remaining allegations in paragraph 37.

38.      Defendants' acts have irreparably harmed and, unless enjoined, will continue to irreparably harm Plaintiff.  Plaintiff has no adequate remedy at law.

**Answer:**      Defendants deny all allegations in paragraph 38.

### THIRD CLAIM FOR RELIEF
### COMMON LAW TRADEMARK INFRINGEMENT

39.      The allegations set forth in paragraphs 1 through 38 hereof are adopted and incorporated by reference as if fully set forth herein.

**Answer:**      Defendants incorporate their responses to paragraphs 1 through 38 by reference as if fully set forth herein.

40.      The aforesaid conduct of Defendants constitutes trademark infringement under the common law of the State of New York.

**Answer:**      Defendants deny all allegations in paragraph 40.

41.     Upon information and belief, by their actions, Defendants intend to continue their unlawful conduct, and to infringe Plaintiff's INMARKIT service mark, unless restrained by this Court.

**Answer:**     Defendants deny engaging in any unlawful conduct, deny infringing Plaintiff's alleged INMARKIT service mark, and deny all remaining allegations in paragraph 41.

42.     Defendants' acts have irreparably harmed and, unless enjoined, will continue to irreparably harm Plaintiff.  Plaintiff has no adequate remedy at law.

**Answer:**     Defendants deny all allegations in paragraph 42.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION

43.     The allegations set forth in paragraphs 1 through 43 [*sic*] hereof are adopted and incorporated by reference as if fully set forth herein.

**Answer:**     Defendants incorporate their responses to paragraphs 1 through 42 by reference as if fully set forth herein.

44.     The aforesaid conduct of Defendants constitutes unfair competition with inMarkit under the common law of the State of New York.

**Answer:**     Defendants deny all allegations in paragraph 44.

45.     Defendants' acts have irreparably harmed and, unless enjoined, will continue to irreparably harm Plaintiff.  Plaintiff has no adequate remedy at law.

**Answer:**     Defendants deny all allegations in paragraph 45.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Failure to State a Claim)

As a first and separate affirmative defense, Defendants allege that the Complaint fails to allege facts sufficient to state a plausible cause of action against them.

### Second Affirmative Defense
**(Lack of Personal Jurisdiction)**

As a second and separate affirmative defense, Defendants allege that this Court does not have personal jurisdiction over Mark Dipaola.  Mr. Dipaola lives and works exclusively in the Los Angeles area.  He is not an employee of inMarket Media and is not involved in the day-to-day operation of the company.  None of the conduct Mark Dipaola is alleged to have engaged in—even if true—was directed at this district.  Accordingly, an exercise of personal jurisdiction over Mark Dipaola is both outside the long-arm statute of the state of New York and amounts to an unconstitutional violation of Mr. Dipaola's right  to due process.

### Third Affirmative Defense
**(Improper Venue)**

As a third and separate affirmative defense, Defendants allege that this district is neither a proper venue for this dispute nor the most convenient forum for the parties and witnesses and that the Court should therefore dismiss this action or transfer this matter to the U.S. District Court for the Central District of California under 28 U.S.C. § 1404.  All three Defendants are residents in the Central District of California, which is also the center of inMarket Media's business operations.  Additionally, the conversation between Mark Dipaola and Plaintiff alleged in paragraph 18 of the Complaint—though it did not constitute Mr. Dipaola's approach to license or acquire the INMARKIT service mark—did take place in the Central District of California. The convenience of the parties and witnesses would best be served by litigating this dispute in the Central District of California.

**Fourth Affirmative Defense**
**(Fraudulent Registration)**

As a fourth and separate affirmative defense, based on the facts set forth in the Counterclaim below, Defendants allege that Plaintiff does not have any valid rights in Reg. No. 3,565,942 because that registration was procured fraudulently.

**Fifth Affirmative Defense**
**(Unclean Hands)**

As a fifth and separate affirmative defense, Plaintiff's claims are barred by the doctrine of unclean hands.  On information and belief, Plaintiff has intentionally allowed inMarket Media to develop significant goodwill in its inMarket Media name and has used this lawsuit (and earlier threats of this lawsuit) in an effort to misappropriate that goodwill.  Plaintiff has also changed its logo to emulate inMarket Media's logo and has followed inMarket Media's product announcements with posts that falsely suggest Plaintiff is offering the same products as Plaintiff.  By way of example, on January 13, 2014, after inMarket Media announced its Mobile to Mortar technology to wide-reaching press coverage, Plaintiff responded with a Facebook post touting a similar beacon-based service.  On information and belief, Plaintiff did not then and does not now sell any beacon-based goods or services under the INMARKIT mark.  Rather, Plaintiff is falsely representing the goods and services it offers in an effort to maintain its registration, support this lawsuit, and take away the goodwill inMarket Media has legitimately developed.

Additionally, Plaintiff has refused to respond to inMarket Media's numerous requests that it provide evidence that it was using the INMARKIT mark in U.S. commerce as of the date it filed the statement of use necessary for it to obtain Reg. No. 3,565,942.  Most recently, inMarket Media made this request through counsel after Plaintiff filed its Complaint.  A few days after inMarket Media's request—with notice that inMarket Media was challenging the validity of Plaintiff's registration and before inMarket Media's answer to the Complaint was due—Plaintiff

submitted a Section 15 affidavit to the USPTO, claiming incontestable status for its INMARKIT

mark.  Plaintiff then sent a copy of that affidavit and a copy of Plaintiff's earlier statement of use

to counsel for inMarket Media.  To this day, Plaintiff has provided no evidence of use other than

the public USPTO records whose validity inMarket Media has called into doubt.

On information and belief, Plaintiff is therefore misusing the registration process in an

effort to gain undeserved procedural advantages over inMarket Media and to assert rights it has

not legitimately acquired through legitimate use.  The Court should therefore hold that principles

of equity bar Plaintiff from recovering on any of its claims.

### Sixth Affirmative Defense
**(Priority of Use)**

Plaintiff's Second, Third, and Fourth claims for relief, based on common law rights

established through Plaintiff's alleged use of the INMARKIT mark in U.S. commerce, are barred

because either:

(a)  Defendants began using the inMarket name and mark in U.S. commerce before

Plaintiff began using the INMARKIT mark in U.S. commerce, or

(b)  Defendants acquired from a third party rights to the inMarket name and mark for use

with in-store marketing and promotional products, which rights predate any rights Plaintiff can

establish in the INMARKIT mark through legitimate use.

### Additional Potential Affirmative Defenses

Defendants reserve the right to amend this Answer and/or allege additional affirmative

defenses after conducting further discovery, investigation, and research.

## COUNTERCLAIM

Defendant (Counterclaim-Plaintiff) inMarket Media, LLC, hereby alleges as follows:

### Nature of the Counterclaim

1.      All of Plaintiff's claims against Defendants depend on Plaintiff's having valid rights in the INMARKIT mark that predate any use of the "inMarket" name and mark by Defendants and/or their predecessors in interest.  To this day, however, Defendants have been unable to detect any legitimate use of INMARKIT by Plaintiff.  Both before and after Plaintiff filed this suit, Defendants asked Plaintiff numerous times to provide proof that it was using the INMARKIT mark in connection with the services identified in U.S. Trademark Reg. No. 3,565,942 currently and as of the date Plaintiff filed a statement of use with the United States Patent and Trademark Office.  Plaintiff has failed to do so, and what little information Defendants have discovered about Plaintiff's efforts to use its INMARKIT mark in commerce shows that those efforts occurred, if at all, *after* Plaintiff submitted a sworn statement to the USPTO that it was using the INMARKIT mark in U.S. commerce on all of the services recited in Reg. No. 3,565,942.

2.      In short, although it appears that Plaintiff may have a *desire* to use the INMARKIT mark in connection with the software and e-commerce services identified in Plaintiff's INMARKIT registration, it apparently lacks the wherewithal, initiative, or interest to turn that desire into a commercial reality.  inMarket Media believes Plaintiff procured its registration by fraud and hereby counterclaims for cancellation of that registration.

### Parties

3.      Defendant/Counterclaim-Plaintiff inMarket Media, LLC, is a limited liability company organized and existing under the laws of the state of Delaware, having its principal place of business at 1350 Abbot Kinney Boulevard #203, Venice, California 90291.

4.      On information and belief, Plaintiff/Counterclaim-Defendant Berkley Networks Corp. is a corporation organized and existing under the laws of the state of New York, having its principal place of business at 175 Varick Street, New York, NY 10014.

### Jurisdiction

5.      This Counterclaim arises under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*  This Court therefore has jurisdiction over the subject matter of this Counterclaim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has jurisdiction over Plaintiff because Plaintiff is a resident of this judicial district and because Plaintiff voluntarily submitted to the jurisdiction of this Court by filing its Complaint in this district.

### Factual Background

7.      On or about December 1, 2005, Plaintiff filed an application with the USPTO to register the mark INMARKIT (U.S. Serial No. 78/764,999) (the "Application").

8.      The Application did not state that Plaintiff was currently using the INMARKIT mark in U.S. commerce on the services identified in the Application; instead, it stated that Plaintiff had a bona fide intent to use the INMARKIT mark in connection with the identified services in U.S. commerce in the future.

9.      On August 21, 2007, in response to the Application, the USPTO issued a Notice of Allowance, informing Plaintiff that it would need to file a statement of use before the USPTO would register the mark and that failure to do so would result in the Application being deemed abandoned.

10.     On February 18, 2008, Plaintiff submitted a request for an extension of time to file the required statement of use.  On information and belief, Plaintiff submitted the request

because it was not yet using the INMARKIT mark in connection with the services identified in its application in U.S. commerce.

11.    On August 5, 2008, Plaintiff submitted a second request for an extension of time to file the required statement of use.  On information and belief, Plaintiff submitted the request because it was not yet using the INMARKIT mark in connection with the services identified in its application in U.S. commerce.

12.    On December 1, 2008, Plaintiff submitted a Statement of Use to the USPTO, signed by its president, Berkley Bowen.

13.    Plaintiff's Statement of Use to the USPTO stated that Plaintiff was, as of December 1, 2008, and at least as early as November 1, 2008, using the INMARKIT mark in U.S. commerce in connection with all of the following services:

> Electronic commerce services, namely dissemination of advertising, discount programs, customer loyalty programs and customer reward programs for others via global computer networks, telecommunications networks, and wireless communication networks; providing a database of customer profiles that enables customers to centralize information from loyalty programs, discount programs and customer reward programs, and to organize, manage and share shopping lists and customer profile information with retailers, vendors and other consumers [International Class 35].

> Electronic commerce and communication services, namely, the electronic transmission and reception of text, data, voice, audio, video, images, sound, information, and other digital and interactive information via global computer networks, telecommunications networks, and wireless communication networks; providing access to a multi-channel interactive network that enables individuals to capture, record and share information about items they wish to purchase or to have purchased via global computer networks, telecommunications networks, and wireless communication networks [International Class 38].

> Providing online, non-downloadable software that enables the interactive exchange of information between retailers, vendors and customers for a variety of goods and services via global computer networks, telecommunications networks, and wireless communication networks; providing non-downloadable software for a multi-channel interactive network that enables individuals to capture, record and share information about items they wish to purchase or to have purchased via

global computer networks, telecommunications networks, and wireless communication networks [International Class 42].

14.     In reliance on Plaintiff's December 1 Statement of Use, the USPTO issued U.S. Reg. No. 3,565,942 on January 20, 2009.

15.     On information and belief, Plaintiff was not using the INMARKIT mark in connection with all of the services identified in its Statement of Use as of December 1, 2008.

16.     Defendants have tried to ascertain the extent of Plaintiff's use of the INMARKIT mark and, to this day, have not been able to detect any legitimate use of the INMARKIT mark in U.S. commerce on any goods or services.

17.     Prior to launching its Mobile to Mortar technology, inMarket Media asked Plaintiff to provide evidence that it was using the INMARKIT mark on the services identified in its registration.  Plaintiff refused to provide any such evidence.

18.     After Plaintiff filed this suit, inMarket Media again asked Plaintiff multiple times to provide evidence that it was using the INMARKIT mark on the services identified in its registration as of December 1, 2008, when it filed its statement of use.  The only information Plaintiff's counsel provided in response to inMarket Media's multiple requests for evidence of use consisted of documents filed with the USPTO in connection with the Application and registration of the INMARKIT mark.

19.     On information and belief, the earliest date on which Plaintiff used its INMARKIT mark on any of the services identified in Reg. No. 3,565,942 was April 1, 2009, when Plaintiff announced the company was "launching" under the INMARKIT name with its "completely new" services, which were supposed to be demonstrated at a convention in April 2009, as reported in the following press release: http://www.reuters.com/article/2009/04/01/idUS117868+01-Apr-2009+BW20090401.

20.    On information and belief, despite Plaintiff's announced "launch[]" on April 1, 2009, Plaintiff still had not used its INMARKIT mark by May 12, 2014, when Plaintiff *again* announced that it "launched inMarkit"—this time at the Magento Imagine 2014 Conference, which was held in Las Vegas from May 12 through May 14, 2014.  *See* Plaintiff's Twitter feed at https://twitter.com/inMarkit/status/465977504571088896 and Plaintiff's blog at http://blog.inmarkit.com/?p=613.

21.    On information and belief, the specimens Plaintiff submitted to the USPTO in connection with its statement of use were not legitimate examples of the INMARKIT mark being used in connection with the services identified in Reg. No. 3,565,942 in U.S. Commerce.

22.    Plaintiff's sworn statement to the USPTO—that the inMarket was being used in connection with all services identified in U.S. Reg. No. 3,565,942 as of December 1, 2008—was therefore fraudulent.

## COUNT I
### (Cancellation of U.S. Trademark Reg. No. 3,565,942)

23.    inMarket Media re-alleges and incorporates herein by reference paragraphs 1 through 22 of this Counterclaim.

24.    Section 1064 of Title 15 of the U.S. Code provides that a person who believes he is likely to be damaged by registration of a mark on the Principal Register may petition to cancel the registration.

25.    Section 1064 of Title 15 of the U.S. Code further provides that fraudulently obtaining a registration is a basis for cancellation and that a claim to cancel a registration on grounds of fraud may be brought at any time.

26.    Section 1119 of Title 15 of the U.S. Code provides that, in any action involving a registered mark, the court has the power to cancel the registration.

27.     inMarket Media believes it is likely to be damaged by maintenance of Plaintiff's Registration No. 3,565,942 because Plaintiff is asserting that registration against inMarket Media in an effort to disrupt inMarket Media's business.  Accordingly, inMarket Media has standing to seek cancellation of Plaintiff's registration.

28.     On information and belief, Plaintiff obtained Registration No. 3,565,942 fraudulently, by knowingly representing to the USPTO that the INMARKIT mark was in use on all of the services identified in Plaintiff's application to register INMARKIT, when in fact it was not.

29.     Plaintiff's statement that the INMARKIT mark was being used in connection with all goods identified in Reg. No. 3,565,942 was material to the registerability of Plaintiff's INMARKIT mark in that the USPTO would not have issued a registration without a statement of use.

30.     On information and belief, Plaintiff falsely represented that the INMARKIT mark was in use in connection with all of the services identified in Reg. No. 3,565,942 with knowledge that that statement was false and with the intention of deceiving the USPTO to issue a registration when it would not have issued one otherwise.

31.     Accordingly, maintenance of this registration is contrary to law, and Registration No. 3,565,942 should be cancelled pursuant to the Court's authority under 15 U.S.C. § 1119.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for relief as follows:

1.     That Plaintiff takes nothing by way of the Complaint;

2.     That judgment be entered for Defendants on all claims for relief asserted in the Complaint;

3.      That judgment be entered for inMarket Media on all claims for relief asserted in its Counterclaim;

4.      An order, certified to the Director of the U.S. Patent and Trademark Office, for cancellation of U.S. Registration No. 3,565,942;

5.      That Defendants be awarded attorneys' fees pursuant to 15 U.S.C. § 1117 because Plaintiff's fraud renders this case an "exceptional" one;

6.      That Defendants be awarded their costs of suit; and

7.      Such other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Defendants hereby demand trial by jury on all claims and defenses that can be tried by jury.


Dated:  September 12, 2014                    Respectfully submitted,

                                              /s/ Floyd A. Mandell
                                              Floyd A. Mandell (*pro hac vice*)
                                              Jeffrey A. Wakolbinger (*pro hac vice*)
                                              Julia L. Kasper (*pro hac vice*)
                                              KATTEN MUCHIN ROSENMAN LLP
                                              525 West Monroe Street
                                              Chicago, IL  60661
                                              Telephone:  (312) 902-5200
                                              floyd.mandell@kattenlaw.com
                                              jeff.wakolbinger@kattenlaw.com
                                              julia.kasper@kattenlaw.com

                                              Jessica M. Garrett
                                              KATTEN MUCHIN ROSENMAN LLP
                                              575 Madison Avenue
                                              New York, NY  10022
                                              Telephone:  (212) 940-8800
                                              Jessica.garrett@kattenlaw.com