# ARNOLD & PORTER LLP

Louis S. Ederer
Louis.Ederer@aporter.com
+1 212.715.1102
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

October 2, 2014

**VIA ECF**
The Honorable William H. Pauley III
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, New York 10007

    Re:    Berkley Networks Corp. ("Plaintiff") v. InMarket Media, LLC. ("Defendants")
            14-cv-05145 (WHP)

Dear Judge Pauley:

    We represent Plaintiff in the above-captioned action. We write in accordance with Your Honor's Individual Rules of Practice to request a pre-motion conference in anticipation of filing a motion for a preliminary injunction, in order to immediately put a stop to Defendants' unlawful behavior and the harm being caused to Plaintiff, which is increasing by the day. Defendants' recent conduct since the filing of the Complaint, in which they are not only continuing to counterfeit Plaintiff's incontestable INMARKIT service mark, but have appropriated Plaintiff's entire business model, has effectively bought Plaintiff's business to a grinding halt; indeed, confusion has become so rampant that prospective customers and the entire trade can no longer distinguish between the parties' respective businesses. Accordingly, Plaintiff has no choice but to seek an injunction against Defendants' egregious and unlawful conduct.

    ***Background.*** As set out in detail in the First Amended Complaint, filed on October 2, 2014, this action arises from Defendants' copying of Plaintiff's registered INMARKIT trademark (i.e., their use of INMARKET), and their increasing encroachment on Plaintiffs' business. In brief, since 2008, Plaintiff has been marketing, promoting, and selling, under the INMARKIT service mark, a variety of mobile shopping services to retailers of consumer products that allow consumers to centralize information they receive from loyalty programs, and receive information about retailers' advertisements, promotions, discount programs and loyalty programs. Plaintiff owns a U.S. registration for INMARKIT (Reg. No. 3,565,942), and the mark is now incontestable.

    Defendants currently offer mobile shopping services that are virtually indistinguishable from Plaintiff's, under the virtually identical mark INMARKET. That, however, has not always been the case — initially, Defendants offered primarily a consumer-focused gamification service under the name "Checkpoints", which encouraged consumers to play games and perform other tasks in exchange for discounts and rewards. Then, on November 29, 2011, Defendants filed an application with the Trademark Office to register INMARKET, which was rejected as likely to be confused

# ARNOLD & PORTER LLP

with Plaintiff's INMARKIT mark for "virtually identical" services. Following the PTO's rejection of Defendants' application, realizing they had no other choice, Defendants approached Plaintiff and sought to license or acquire the INMARKIT service mark; but Plaintiff flatly refused.

At that point, rather than ceasing their use of the mark, Defendants announced a change in their business name to "inMarket", and thus began their campaign to hijack Plaintiff's business and identity. Upon learning of Defendant's change of name, Plaintiff immediately notified Defendants of their infringing behavior and demanded that they cease using the virtually identical INMARKET name. A series of lawyers' letters ensued over an 18 month period, and ultimately Plaintiff was assured that Defendants would not use their INMARKET name with a competing technology. However, that is precisely what has now happened.

Thus, in 2014, Defendants' encroaching behavior began to reach such extreme levels that Plaintiff had no choice but to commence this current action. Not only did Defendants stop using "Checkpoints" and instead focus their business on the INMARKET name, but for the first time they launched a "mobile to mortar" business under that name, as Plaintiff had been doing for years. Then, after that, Defendants began using Apple's iBeacon platform in an effort to further replicate Plaintiff's INMARKIT business, by offering retailers and manufacturers a locating platform to reach consumers about their product offerings and availability, just as Plaintiff had been doing (through various means) since its inception in 2008. Further, it was only after filing its Complaint that Plaintiff began to experience the full effect of Defendants' behavior, namely, the disassociation of their "Checkpoints" business from their INMARKET business, including the deletion of any links between their www.inmarket.com website and www.checkpoints.com website. Plaintiff has also since learned that Defendants have been promoting their copycat INMARKET business to prospective customers, including several who have been dealing with Plaintiff, essentially as if they were Plaintiff. As a result, as recently as last week, potential customers, and even prospective INMARKIT employees were confused, and believed that Plaintiff's and Defendants' business were one and the same.

*Argument.* To obtain a preliminary injunction, a plaintiff must show: "(1) a likelihood of success on the merits; (2) that absent an injunction Plaintiff is likely to suffer irreparably injury that cannot be remedied with monetary damages; (3) that the balance of hardships tips in favor of Plaintiff; and (4) that 'the public interest would not be disserved' by the issuance of an injunction." *Marks Organization, Inc. v. Joles*, 784 F. Supp. 2d 322, 327 (S.D.N.Y. 2011). Here, Plaintiff can easily demonstrate all four grounds.

*First*, Plaintiff is more than likely to succeed on the merits of its claims. In a trademark infringement action, a plaintiff will establish a likelihood of success if (1) plaintiff has a legal, exclusive right to the mark, and (2) there is a likelihood that customers will be confused as to the source of the infringing product or services. *See, e.g., Mister Softee, Inc. v. Tsirkos*, 2014 WL 2535114, at * 5 (S.D.N.Y. Jun. 5, 2014). Not only are the marks here virtually identical (indeed, substantially indistinguishable, the standard for counterfeit trademarks), but Plaintiff is prepared to submit evidence that customers and the trade are increasingly actually confused on a daily basis as to the true source of Defendants' business.

2

# ARNOLD & PORTER LLP

*Second*, without an injunction, Plaintiff's business will suffer irreparable harm, which, in a trademark case, exists "when the party seeking the injunction shows that it will lose control over the reputation of its trademark." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2001). Here, that is exactly what happened, just as Defendants planned it. And, although Plaintiff will demonstrate that it was unaware of the extent to which Defendants have continued to encroach on its business, so long as "the likelihood of confusion is so great", this outweighs the timing of any preliminary injunction motion. *See, e.g., ProFitness Physical Therapy Ctr. V. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002); *Marks*, 784 F. Supp. 2d at 333. Further, this is a paradigm case for the application of the progressive encroachment doctrine – which focuses the court's attention on the question of whether defendant, after beginning its use of the mark, redirected its business so that it more squarely competed with plaintiff and thereby increased the likelihood of public confusion of the marks. *Id.* at 70. Now, as a direct result of Defendants' recent conduct, at every meeting Plaintiff attends to promote its services, it encounters widespread confusion, with attendees being of the belief that Defendants are Plaintiff and/or that Plaintiff is Defendants. Indeed, Plaintiff now has evidence that, when given oral direction to visit Plaintiff's www.inmarkit.com website, prospective customers, nearly without exception, will access Defendants' www.inmarket.com website, and wrongfully think they are on Plaintiff's site. Thus, given Defendants' deliberate and increasing theft of Plaintiff's business, Plaintiff will undoubtedly suffer irreparable harm without an immediate injunction, regardless of the time that has elapsed since filing the Complaint.

*Third*, the balance of hardship decidedly tips in favor of the Plaintiff. Without the injunction, the public will continue to be confused as to the true source of Defendants' services, and the goodwill in Plaintiff's INMARKIT mark will continue to suffer as a result. Plaintiff welcomes competition from Defendant, so long as that competition is lawful. *Fourth*, the Second Circuit has held that there is a "strong interest in preventing public confusion." *ProFitness*, 314 F.3d at 68. Because Plaintiff has sufficient evidence showing increasing and actual confusion among prospective customers and the trade as a whole, granting an injunction would serve the public's best interest.

*Finally*, Defendants' "fraud on the Trademark Office" defense is totally without merit, and a complete red herring. As the evidence will clearly show, Plaintiff has been using its INMARKIT mark continuously since 2008, in promotional materials, presentations to high level management personnel at major consumer product companies, and at trade shows and other public events. Indeed, Plaintiff has spent upwards of ten million dollars promoting and marketing its services under the INMARKIT mark. Further, the USPTO accepted Plaintiff's Statement of Use years ago, and the INMARKIT registration is incontestable. Thus, if anyone has engaged in inexcusable delay, it is Defendants, who never contested Plaintiff's registration any time before it went incontestable in August 2014.

Accordingly, Plaintiff has no choice but to seek a preliminary injunction, literally so that it may continue to survive during the pendency of this action. We thank the Court for its consideration, and stand ready to conference this matter at the earliest possible date.

# ARNOLD & PORTER LLP

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____
Louis S. Ederer

cc:   Defendants' counsel. (*via ECF*)