# Katten

Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL  60661-3693
312.902.5200 tel
312.902.1061 fax
www.kattenlaw.com

October 9, 2014

Floyd A. Mandell
floyd.mandell@kattenlaw.com
312.902.5235 direct
312.902.1061 fax

<u>Via ECF</u>

The Honorable William H. Pauley III
United States District Court (S.D.N.Y.)
500 Pearl Street, Room 1920
New York, NY  10007

Re:  *Berkley Networks Corp. v. inMarket Media, LLC*, 14-cv-5145(WHP)

Dear Judge Pauley:

Plaintiff's sudden claim of urgency in its request for a conference on a motion for preliminary injunction [Dkt. 20] is undermined by the almost *three years* that have passed since Plaintiff first discovered Defendant inMarket Media's ("Defendant's") use of its inMarket mark. Equity demands that Plaintiff's request for preliminary relief be denied for that reason alone. Moreover, in stark contrast to the picture Plaintiff's counsel tries to paint in the letter before the Court, Plaintiff does not appear to have any goodwill for Defendant to appropriate. While Defendant has successfully developed, marketed, and sold its services for over two years, Plaintiff's business appears nonexistent. Defendant has made *multiple* requests over the years for proof that Plaintiff was legitimately using its claimed INMARKIT mark, including several requests made after Plaintiff filed its complaint nearly three months ago in July. Plaintiff has refused—or been unable—to produce any evidence of legitimate trademark use supporting its registration. For this reason, among others, Plaintiff is unlikely to prevail on the merits of its claims.

***Plaintiff has unreasonably delayed in requesting the extraordinary remedy of a preliminary injunction.***
Plaintiff's principal, Berkley Bowen, met with Defendant's chairman, Mark DiPaola, in December 2011 and again in February 2012, shortly after Plaintiff's attorneys sent a letter to Defendant in which Plaintiff objected to any use of the inMarket name and threatened legal action if Defendant did not immediately cease all use and transfer its domain names (www.inmarket.com and www.inmarketmedia.com) to Plaintiff. Mr. Bowen offered to sell Plaintiff's purported trademark rights to Defendant at that time, but Defendant was unable to discern *any* goodwill associated with the name and declined the offer. That was over two-and-a-half years ago.

Plaintiff sent another letter on April 3, 2012, making the same objection and again threatening legal action. Defendant, who had shifted from its original company name of CheckPoints LLC, which represented only a single consumer-facing app, to inMarket Media LLC, which better represented the broader services it had begun to provide, still saw no indication that Plaintiff was conducting business in connection with its purported INMARKIT mark, despite requests for such evidence and its own investigation, and chose not to capitulate to Plaintiff's unfounded demands. Throughout 2012 and 2013, Defendant continued to develop significant goodwill associated with the inMarket name, which is now recognized by its dozens of customers (including such Fortune 500 companies as Starbucks, P&G, and Coca-Cola) and prospective customers. During those years, Defendant did not hear anything further from Plaintiff. Nor did it hear anything *about* Plaintiff. In fact, Defendant has never encountered a customer who has even *heard* of Plaintiff, let alone confused Plaintiff with Defendant.

In January 2014—after more than 21 months of silence—Plaintiff again contacted Defendant to object to its use of the inMarket name. Plaintiff's renewed objection (and threat of litigation) was purportedly premised on an article regarding Defendant's beacon-based service being deployed in major supermarket



chains. (Defendant is certified by Apple to manufacture hardware and mobile solutions in connection with Apple's iBeacon technology and runs a platform that allows mobile shopping apps to provide user experiences and advertising based on the smartphone user being inside a particular store.) Defendant responded on February 17, 2014, explaining that it had invested substantial resources growing its business under the inMarket name and had received major industry and public recognition, including articles in Forbes and the Wall Street Journal and a cover story in Entrepreneur magazine. Defendant also reiterated its belief that Plaintiff appeared to be running a phantom business and invited Plaintiff to demonstrate otherwise, stating, "If we are mistaken, please provide evidence that [Plaintiff] currently uses its mark, has a beacon-based product, and transacts business with clients in connection with each of the services that are listed it the '942 registration . . . ." Plaintiff did not respond (presumably it had no such evidence). With full knowledge of Defendant's widely reported name and business in hand, Plaintiff still waited another *five months*, on top of the previous 21 months of inaction, before filing its Complaint.

Even then, and despite its allegations that it was being irreparably harmed by Defendant's software platform, Plaintiff did not seek preliminary relief. Instead, Plaintiff's counsel did nothing until Defendant's counsel approached them about holding a Rule 26(f) conference, at which point Plaintiff's counsel informed Defendant's counsel it could not attend the Court's scheduled conference on October 17 (forcing Defendant's counsel to incur costs associated with rescheduling travel and business meetings), dodged requests to find another mutually feasible date, and filed the letter that is now before the Court.

Plaintiff's delay in seeking a preliminary injunction severely undercuts any claim that such a drastic remedy is necessary to preserve the status quo, and its request should therefore be denied. *See, e.g., Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (reversing district court's grant of preliminary injunction due to plaintiff's 10-week delay in seeking injunctive relief); *Transcience Corp. v. Big Time Toys, LLC*, No. 13-cv-6642 ER, 2014 WL 4827878, at *10 (S.D.N.Y. Sept. 23, 2014) (finding plaintiff seeking preliminary injunction could not claim irreparable harm after delaying more than a year after being put on notice of potential trademark infringement). Notwithstanding Plaintiff's efforts to justify its delay by asserting that Defendant has progressively encroached further into whatever hidden business Plaintiff claims to have, neither Defendant nor its product offerings have changed at all since Plaintiff filed its complaint three months ago. Plaintiff's assertions to the contrary are false. Public records show the website at www.inmarket.com has not changed; Defendant has not disassociated its CheckPoints app from the rest of its business; links between www.checkpoints.com and www.inmarket.com have not been deleted; and Defendant has *never* promoted itself to prospective customers as if it were Plaintiff. Indeed, the idea that a company that has been featured in Forbes, the New York Times, the Chicago Tribune, Fast Company, on the cover of Entrepreneur, and in dozens of other publications and websites, would prefer that potential customers associate its services with Plaintiff's apparently non-existent business, defies reason. The notion that Defendant has "appropriated Plaintiff's entire business model" or tried to "hijack Plaintiff's [unknown] business and identity" is not credible. If anything has changed in recent months, it is Plaintiff's actions, not Defendant's, and any recent promotional efforts on Plaintiff's part are an *ex post facto* effort to try to establish some use in its mark and manufacture confusion where none has existed. Where, as here, the owner of a purported mark "has timed the request for injunctive relief so as to inhibit competition," the request should be denied. *Gidatex, S.r.L. v. Capaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998).

***A preliminary injunction would change the status quo, not preserve it.*** The purpose of a preliminary injunction is to preserve the status quo pending final resolution of a dispute. *Arthur Guinness & Sons, PLC v. Sterling Pub. Co.*, 732 F.2d 1095, 1099 (2d Cir. 1984). In this case, the status quo is as follows: Defendant has operated under that name since early 2012. As of today's date (and as of the date Plaintiff filed its complaint), dozens of brand owners have purchased Defendant's products, while partnerships have been forged with apps and retailers, and Defendant has invested significant funds in promoting its goods and services under the inMarket name. Plaintiff and its CEO, Berkley Bowen, on the


other hand, appear to be unknown, with no discernible clients or product offering, and no bona fide business. If this Court were to grant a preliminary injunction, the status quo would be turned on its head. Defendant would be forced to abandon the extensive goodwill it has developed in its name over the past several years, and Plaintiff would be allowed to proceed to develop the business it has thus far failed to develop, which, according to Plaintiff, would be competitive with Defendant's business. Thus, Defendant is the one that would be irreparably harmed by a preliminary injunction, and the balance of hardships favors Defendant. Plaintiff has no goodwill, industry reputation, or customer relationships to harm. Further, as shown by Plaintiff's previous request that Defendant buy its purported trademark rights, a monetary recovery would be sufficient to compensate Plaintiff fully in the unlikely event Plaintiff could prevail on any claims against Defendant following a full and fair opportunity to litigate.

***Plaintiff is not likely to prevail on the merits.*** Plaintiff's entire claim is based on the fact that it owns a trademark registration for INMARKIT. Having convinced the PTO that it was entitled to registration during the *ex parte* examination process, Plaintiff apparently believes it is forever relieved of the obligation to convince anyone else. As alleged in its Counterclaim, Defendant disputes the validity of that registration. Although the parties are at odds, they have to agree on this: if Plaintiff was not using the INMARKIT mark in commerce on December 1, 2008, when Mr. Bowen swore to the PTO that it was, it obtained its registration by fraud, and it cannot rely on that registration to support its claimed trademark rights. And without a valid registration, Plaintiff cannot prevail on its claims unless it can show, among other things, that it was legitimately using its INMARKIT mark in U.S. commerce before Defendant began to offer goods and services under its own name. Despite multiple requests over the years for evidence of legitimate use, Plaintiff has repeatedly failed to produce a shred of proof to support this fundamental element of its claim. Moreover, as explained in Defendant's counterclaim (¶ 19), Defendant's investigation revealed that Plaintiff publicly announced its intended launch of its INMARKIT services on April 1, 2009—five months after it told the PTO it was already using the mark. Even after Plaintiff filed its Complaint, Defendant's counsel explained its view that Plaintiff's registration may have been improperly granted, asked Plaintiff's counsel for evidence of use that would support its registration, and explained that this information might significantly narrow the issues and allow the parties to conclude this dispute. Plaintiff would not provide such evidence. Instead, knowing that Defendant intended to challenge the validity of Plaintiff's trademark registration, Plaintiff's counsel raced to the PTO to claim incontestability status (which merely requires a statement that the mark has been used continuously for the past five years but does not involve independent PTO review) and sent copies of its disputed statements to Defendant as its sole purported proof of use. To this day, Plaintiff has refused to provide any evidence to back up its statement to the PTO, whereas Defendant has identified Plaintiff's CEO, Berkley Bowen, publicly contradicting his sworn PTO statement.

For all or any of the above reasons (delay, no showing of irreparable harm or harm that a monetary recovery could not satisfy, the balance of hardships strongly favoring Defendant, and Plaintiff's inability to show a likelihood of success on the merits), a motion for preliminary injunction is not appropriate. Rather, Defendant asks, this time with the aid of the Court, that Plaintiff demonstrate it used the mark in a manner that would validate its trademark registration. If Plaintiff can do so, Defendant would propose the parties consider this evidence and discuss how this case might be resolved before proceeding further. Regardless, Plaintiff's untimely and unfounded request for preliminary relief should be denied.

Respectfully submitted,

Floyd A. Mandell

cc:     Plaintiff's counsel of record (via ECF)