# ARNOLD & PORTER LLP

Louis S. Ederer
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

January 13, 2015

**VIA ECF**

The Honorable William H. Pauley III
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, New York 10007

    Re:   <u>Berkley Networks Corp. d/b/a inMarkit v. inMarket Media, 14-cv-05145 (WHP)</u>

Dear Judge Pauley:

    Plaintiff Berkley Networks Corp. ("Plaintiff") respectfully moves, pursuant to FRCP 37 and Local Rule 37.2, as well as the Court's Individual Rules, to compel Defendants to respond to Plaintiff's Requests for Production of Documents and Things ("Requests").

    **Plaintiff's Position.** This motion relates to the First and Second Sets of Requests Plaintiff has served on Defendants, copies of which are attached hereto as Exhibit A, which have been outstanding since October 29 and December 1, 2014. The Requests, in their totality, are comprehensive, and were designed, among other things, to obtain a complete production of Defendants' documents, prior to the preliminary injunction hearing, that would demonstrate the nature of the business Defendants have been conducting under the trademark INMARKET since 2012.

    In response to these Requests, Defendants produced a total of approximately 3,500 pages of documents. Most of those documents either related to a supposed purchase of rights to the name "Inmarket Media, LLC" from a defunct business, made by Defendants in 2012 in an effort to gain trademark priority over Plaintiff (*see* Defendants' Affirmative Defense No. 6 in their Amended Answer (Dkt. No. 33)), or consist of external press articles about Defendants' business. Nearly none of them are internal or external documents that show anything about the business Defendants have actually been conducting under the INMARKET mark during that period. In contrast, Plaintiff has produced over 30,000 pages of documents, both internal and external, covering every aspect of Plaintiff's business since its inception.

    As the Court is aware, Defendants have relied heavily on their claim that they have been using their INMARKET mark for essentially the same business operation since 2012, and as a result their INMARKET network has over 30 million users. As Your Honor may recall, during the December 18, 2014 preliminary injunction hearing, Defendants' counsel specifically claimed

that "nothing" in his client's business "has materially changed since 2012" (Tr. 37:6-7), and within three years it has gained "31 million users" (Tr. 37:22). Notably, in its December 30 Order denying a preliminary injunction, the Court credited these arguments. Plaintiff believes these claims are false, and has been trying for months to obtain the documents which demonstrate that. In any event, Plaintiff is clearly entitled to all non-privileged documents relating to these and the other topics identified below, and in the attached communications between the parties, as they are undoubtedly "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

We first spoke to Defendants' counsel regarding their document production deficiencies in a December 9, 2014 phone call, during which we identified seventeen Requests to which Defendants had not satisfactorily responded. Present on that call were Laura Tejeda and Julie Simeone from Arnold & Porter, and Jeffrey Wakolbinger and Julia Kasper from Katten Muchin. At the time, Defendants' counsel represented that additional documents would be produced, and offered a vague explanation as to the reasons why certain documents were missing from the production.

After receiving a meager supplemental production, on December 17, 2014, we sent Defendants' counsel a letter stating, in detail, the types of documents we anticipated receiving, but that were still conspicuously missing. A copy of that letter is attached as Exhibit B. In short, the following categories of documents, whose relevance cannot be disputed, were still missing, either in whole or in part: (1) documents relating to Plaintiff and/or its principal, Berkley Bowen; (2) documents relating to the Defendants' business being conducted under the INMARKET trademark since 2012; (3) documents relating to the inmarket.com website and any revisions thereto; (4) documents relating to inMarket's introduction of location-sensing iBeacon technology into their INMARKET service in 2014; and (5) invoices and/or other documents that sufficiently identify inMarket's customers and users, and the products and/or services they have purchased from Defendants. In addition, in that same letter, because we had serious doubts that Defendants had properly searched the entire universe of available documents, we questioned the scope of their search, and asked Defendants' counsel to disclose to us what searches had actually been conducted, and of what universe of documents. Finally, we requested an immediate response to that letter in order to resolve all outstanding discovery issues, **but no response to that letter has ever been received**.

Having heard nothing from Defendants' counsel, we sent a follow-up letter on January 7, 2015. A copy of that letter is attached as Exhibit C. In addition to restating our prior concerns, having had the benefit of hearing Defendants' arguments at the preliminary injunction hearing on December 18, 2014, we again noted the absence of any meaningful documents illustrating exactly how inMarket has been using the INMARKET mark in the same manner since 2012. In response, in a letter dated January 8, 2015 (copy attached within Exhibit C), we were informed, among other things, that the Defendants themselves had been conducting searches for potentially responsive documents, and making relevancy decisions, rather than Defendants' counsel; indeed, Mr. Wakolbinger writes that "our clients searched for documents regarding your client and Mr. Bowen." This is contrary to law — the law requires that counsel conduct the document review

and make relevancy decisions. *See* Order, *Ward v. Barnes & Noble, Inc.*, No. 1:13-cv-07851-JMF (S.D.N.Y. Apr. 18, 2014) (Dkt. No. 18).

Once again, Defendants have produced virtually no documents showing how they have been using the INMARKET mark since 2012, what business they have been conducting under the mark, how their business has or has not changed since that time, and who their "31 million users" are or what aspect of Defendants' INMARKET service they are "using". We have noticed the depositions of Defendants' principals for the dates of January 21-23. In view of the upcoming trial schedule, it is imperative that we receive all documents that we are entitled to as expeditiously as possible. Accordingly, we ask the Court issue an immediate order to that effect, and also award appropriate sanctions, including the fees incurred in having to go through this exercise.

We thank the Court for its consideration of this matter, and are prepared to conference it if the Court so requires.

**Defendants' Response.**

Plaintiff submitted the above portion of this joint discovery letter to Defendants at 11:39 a.m. (CST) on January 12, 2015, and demanded a response by 3:00 p.m. (CST) the following day. Defendants' timely response is set forth herein and submitted to the Court with Defendants' permission. As explained below, Plaintiff does not identify which discovery requests it believes Defendants have failed to respond to and now asks the Court to order the production of broad and vaguely defined categories of information, some of which Plaintiff requested as recently as January 7 (Defendants' responses to those requests are not yet due) and some of which Plaintiff has *never* requested, *all without first having a conference with Defendants to try to resolve the issues without the Court's involvement.*

Absent from Plaintiff's portion of this letter is any reference to a specific document request to which Defendants have failed to respond. Local Civil Rule 37.1 provides that the moving party in a discovery dispute "shall specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed," along with the grounds upon which the moving party is entitled to prevail. This is no mere technicality; it serves a "clearly useful purpose" (L.R. 37.1, Committee Note) of framing the dispute in a manner that allows the opposing party and the Court to evaluate the reasonableness of the request and the adequacy of the response.

Plaintiff instead speaks generally of documents it wished to see in Defendants production, without so much as establishing that Plaintiff even asked for such documents. The issue here is not what Plaintiff would like or what might arguably be relevant to the claims and issues in dispute; the issue is whether Defendants failed to respond to a valid request for discovery. This point has been explained previously to Plaintiff's counsel on multiple occasions. Indeed, when Plaintiff's counsel first wrote to Defendants' counsel on December 5 with vague claims of documents missing from Defendants' production in response to Plaintiff's first set of

document requests, Defendants' counsel offered to speak with her about these issues but advised in advance of that call, "With regard to your suggestion that something was missing in that production, . . . you will have to be more specific if you hope to have a productive conversation." A copy of that email is attached as Exhibit D. Notwithstanding Defendants' counsel's request for more information, Plaintiff's counsel did not respond with any more details before or during their conference call on December 9. (Defendants' counsel does not recall Plaintiff's counsel identifying "seventeen Requests to which Defendants had not satisfactorily responded," as they now claim.) Nor did she provide any more specificity in subsequent correspondence, with the instant letter proving no exception.

For example, Plaintiff continues to claim that invoices are missing from Defendants' production. The problem with this assertion is that Plaintiff never asked for invoices. When Plaintiff's counsel questioned why Defendants did not produce all invoices during the December 9 phone call, Defendants' counsel asked her to identify a specific document request that required Defendants to produce all of its invoices. She was not able to do so then, and has not done so since. More than a week later, in a letter dated December 17, Plaintiff claimed it was actually its *second* set of requests that required Defendants to produce its invoices. This is problematic for two reasons. First, Defendants' responses to these requests were not yet due at the time of the December 9 call. And, second, the identified requests still do not call for Defendants' production of all invoices. Plaintiff's Request No. 59 sought all documents showing the brand owners that have purchased Defendants' products under the INMARKET name, and Request No. 60 sought all documents showing the partnerships that Defendants have forged with apps and retailers. Defendants had timely responded to those requests on December 15, stating that they were overly broad and unduly burdensome and that Defendants would therefore produce representative samples of documents responsive to these requests. They did so, producing numerous written agreements with brand owners, apps, and retailers involving the provision of Defendants' services under the inMarket name. Those requests do not entitle Plaintiff to invoices, and Plaintiff has identified no other requests that do.

Before Plaintiff asserts that Defendants have failed to provide it with the documents it desires, Plaintiff should first examine whether it asked for those documents in the first place. Despite Plaintiff's current representation that its first two sets of documents requests were "comprehensive," Plaintiff served an additional 19 requests on January 7, such that, pursuant to the Court's seven-day deadline for responding to all future discovery requests, Defendants' responses are due on the same day Defendants had already noticed for Plaintiff's deposition. These most recent requests are extremely broad, calling for such items as all communications with any external entities regarding press and published materials (No. 66), all documents concerning how the INMARKET mark has been used in commerce (No. 69), and all communications with customers and potential customers (No. 70). At best, these requests represent Plaintiff's realization that it did not craft the initial comprehensive discovery requests it thought it had. At worst, Plaintiff's new requests represent an effort to distract and burden Defendants as they try to take discovery and prepare for trial on the case schedule that was recently accelerated at Plaintiff's request.

At any rate, Plaintiff's letter is premature. Defendants informed Plaintiff they would soon be supplementing their production in their letter of January 8, and Defendants' responses to Plaintiff's third set of requests (which cover some of the general categories Plaintiff now claims not to have received) are not due until January 14. In this manner, Plaintiff is asking the Court to find that Defendants have failed to produce documents that are not yet due, even under the Court's expedited 7-day schedule. (*Compare, e.g.*, Plaintiff's statement above, asserting that Defendants have produced no documents showing their 31 million users, *with* Plaintiff's Request No. 74, which was served only six days ago, requesting "documents sufficient to identify the breakdown of how inMarket's products and/or services reach '31 million users', as stated during the Preliminary Injunction Hearing.") Moreover, Plaintiff has noticed a deposition of Defendants' custodian of records, which is scheduled to take place on January 22, 2015.

Furthermore, Plaintiff should also consider the possibility that certain documents it is demanding simply do not exist. In discussing purportedly missing communications regarding Plaintiff and Berkley Bowen, Plaintiff asserts that Defendants' counsel has somehow acted contrary to law by not physically traveling to their clients' offices to collect documents. Plaintiff's sole support for this position is a docket entry from another case in which Plaintiff's counsel appeared. That docket entry has no bearing on this case and, at any rate, merely shows that an attorney was cautioned not to rely on his client's own lay assessments of relevance. Defendants' counsel has never stated to Plaintiff's counsel that it relied entirely on its clients' lay assessment of relevance, and it represents to Plaintiff now that it has not. For example, in response to Plaintiff's various requests for documents relating to Plaintiff or Berkley Bowen, Defendants identified custodians likely to have such documents if such documents exist (including Mark and Todd Dipaola) and, at counsel's direction, searched all correspondence to or from those custodians for the terms Berk\*, Bowen, and inMarkit. Defendants' counsel then reviewed the documents collected as a result of those searches and, if not privileged, produced those documents that were responsive (i.e., counsel excluded documents that came up in the search because they referred to, for example, Debra *Bowen*, California's Secretary of State, or *Berk*ely, the city). Document collection and production almost always involve the client's input as to what kind of documents are created in the course of the client's business and where relevant documents are likely to be located. Defendants are aware of no law that suggests this form of document collection is improper and that an attorney must instead go to its clients' premises and physically collect every document generated by the client for review.

As supposed evidence of deficiencies in Defendants' production, Plaintiff boasts that it has produced more pages of documents than Defendants. Defendants submit that the number of pages produced by a party in discovery is a poor measure of discovery compliance because it depends on a number of factors, including the size of the parties, the extent to which those parties communicate through written communications, the extent to which a party's production includes nonresponsive documents or multiple drafts or copies of the same document, and the quantity and quality of the discovery requests to which documents were produced in response. As stated above, if there is a dispute for the Court to resolve, it must involve an analysis of what, specifically, was requested and what, specifically, was produced or not produced in response, not a contest regarding which party produced the most documents.

# ARNOLD & PORTER LLP

Also absent from Plaintiff's portion of this letter is any mention of contacting Defendants' counsel to try to resolve these issues by phone, as Plaintiff made no effort to do so, despite Defendants' counsel's offers to discuss Plaintiff's concerns as recently as their letter of January 8, attached as Exhibit C (which, contrary to Plaintiff's assertion, did respond to Plaintiff's letter of December 17). Plaintiff's failure to discuss these issues with Defendants violates Your Honor's Individual Practices (Section III.A.iv) and forecloses Plaintiff's request for attorneys' fees, even if Plaintiff were to prevail, see Fed. R. Civ. P. 37(a)(5)(A)(i) (providing that the Court may not order payment of the moving party's attorneys' fees if the movant filed the motion before attempting in good faith to obtain the discovery without court action).

The remainder of Plaintiff's request for relief is as vague as its assertions that Defendants have failed to comply with their discovery obligations: Plaintiff asks the Court to issue an immediate order to allow Plaintiff to "receive all documents that [they] are entitled to as expeditiously as possible." Such an order, if granted, would be close to meaningless, particularly in light of Plaintiff's failure to identify specific document requests, and Plaintiff's request should be denied. In light of Plaintiff's efforts to create a burdensome and premature discovery dispute without attempting to resolve the issue without the Court's involvement, Defendants respectfully ask the Court to award its fees incurred in connection with responding to the issues raised in Plaintiff's portion of this joint statement.

Respectfully Submitted,

ARNOLD & PORTER LLP

By _____
Louis S. Ederer

cc: Defendants' Counsel (by ECF)